| NORRIS, Chief Judge.
This appeal arises from a succession proceeding. The executrix, Winnifred Hollingsworth Jackson, daughter of the decedent, appeals the trial court judgment interpreting the word “treasury” in the will and finding the amount in the treasury of the Good Samaritan Funeral Home, Inc. to be $186,980.61, rather than $144,525.00. We affirm.

Facts

Johnny Davis, Jr. died testate on September 10, 1997. In his will, Mr. Davis left certain legacies of his estate which were to be determined in amount by the size of the treasury of his privately held company, the Good Samaritan Funeral Home, Inc.
The will states that these legacies were to be determined by the size of the treasury of the company over $100,000.00. The will states in pertinent part:
“4. To the full time employees listed herein in item # 4, I leave to them the excess of the Good Samaritan Funeral Home’s Treasury, above $100,000, to be divided equally among them: Marie Williams, Dorothy Harris, David Henderson, Ruth Thomas, Gerald Pitts & Donald Smith.”
“5. To the part-time employees listed herein in item # 5, I leave to them the excess of the Good Samaritan Funeral Home’s Treasury above $100,000.00 minus the amount bequeathed in item # 4, to be divided among them equally, which *1196 must be half of the amount given to each individual in item # 4: Gordon Adams, Charles Wesley Adams, Quinten Whitaker, (sic) and Gary Carter.”

19Discussion

In will contest cases, the factual findings of the trial court are afforded great weight and will not be disturbed on appeal in the absence of manifest error. Succession of Hackney, 97-859 (La.App. 3 Cir. 2/4/98), 707 So.2d 1302; See also In re Succession of Lovoi, 00-1391 (La.App. 5 Cir. 12/27/00), 777 So.2d 627; Succession of Roniger, 97-1088 (La.App. 4 Cir. 1/14/98), 706 So.2d 1025. Louisiana Civil Code article 1611 states that if the language of the testament is clear, its letter is not to be disregarded under the pretext of pursuing its spirit. The intent of the testator is the paramount consideration in determining the provisions of a will, and when a will is free from ambiguity, the will must be carried out according to its written terms, without reference to information outside the will. Succession of Tyson, 30,703 (La.App. 2 Cir. 6/26/98), 716 So.2d 148. In the interpretation of wills, the first and natural impression conveyed to the mind on reading the clause involved is entitled to great weight. Succession of La Barre, 179 La. 45, 153 So. 15 (1934). See also Succession of Tyson, supra.
At a hearing on this matter, Mr. Young-blood, a CPA hired by the executrix, testified that the term “treasury,” as used here, is not an accounting term of art. Furthermore, he testified that he had to make a professional judgment call in determining that the term should be equated with “working capital” or “net working capital.” “Net working capital” is an accounting term of art that includes those assets (such as cash, deposit accounts, and certificates of deposit) which generally could be liquidated within 90 days, minus the outstanding liabilities of the organization. |sAccountants use the net working capital of an enterprise to assess its overall liquidity, and therefore, financial health. He testified that in his experience small business owners are primarily concerned with their current liquidity to determine the financial health of their business. Mr. Youngblood further testified that in interpreting the term he did not research it in an English dictionary, nor a legal dictionary, but did perform a search in an accounting database. This search produced no helpful definition. At the hearing on the matter, Mr. Youngblood could cite no authority which equated the term with net working capital.
Counsel for the legatees referenced Webster’s Dictionary and Black’s Law Dictionary, neither of which equate the term “treasury” with the financial health or overall liquidity of an organization. Instead, both refer to a treasury as either the repository for funds of a state or corporation, or the funds themselves in such a repository. Neither dictionary mentions outstanding liabilities as having any bearing on a treasury.
The executrix cites La. C.C. art. 1613 as applicable. It states that if the object of a legacy is undeterminable as between a greater and a lesser amount, the lesser amount should control. As the net working capital figure is a lesser amount than the simple total of the liquid assets of the organization, the executrix argues that the net working capital figure must be adopted by this court as the amount in the treasury. Furthermore, she relies on the testimony of Mr. Youngblood, a CPA, that “treasury,” though not an accounting term of art, is best equated with “net working capital” because that is the number most small businessmen use to “project the | ¿liquidity of his enterprise.” Ms. Jackson argues that the testator fashioned this legacy so as to preserve the financial health of his business.
*1197 The legatees rely on La. C.C. art. 1611. It states that if the language of the testament is clear, its letter is not to be disregarded under the pretext of pursuing its spirit. Article 1611 further states that the following articles, including 1613, are to apply only if the intent cannot be ascertained from the language of the testament. Legatees argue that, in light of article 1611 and the plain English language definition of the term, “treasury,” as it is used in the testament of Mr. Davis, simply means those highly liquid capital assets of the Good Samaritan Funeral Home, Inc.
Upon review, we cannot find that the trial court judgment was manifestly erroneous. The testator is not supposed to be propounding riddles, but rather to be trying to convey his idea in the simplest manner so as to be correctly understood at first view. Succession of La Barre, supra; citing Succession of Bobb, 41 La. Ann. 247, 5 So. 757 (La.1889). Since there is no reason to believe that Mr. Davis meant “net working capital” when he used the term “treasury” in his will, and since there is no reason to believe that the term “treasury” should encompass anything other than its plain English language meaning, we find the trial court was not in error in finding that the treasury of the funeral home over $100,000.00 was $86,980.61.

Conclusion

For the foregoing reasons, the district court’s judgment in favor of the appellees Dorothy Adams, Marie Williams, David Henderson, Charles | fiWesley Adams, Quenton Whitaker, and Gardner Adams is affirmed. Costs of this appeal are assessed to appellant Winnifred Hollings-worth Jackson.
AFFIRMED.