716 So.2d 148 (1998)
SUCCESSION OF Marshall Lee TYSON.
No. 30703-CA.
Court of Appeal of Louisiana, Second Circuit.
June 26, 1998.
Barry Feazell, for Appellant Exie B. Tyson and Arbie E. Fields.
*149 T. Lynn Geneux, Shreveport, for Appellee Irene Tyson Hucherson.
Before MARVIN, C.J., and NORRIS and WILLIAMS, JJ.
WILLIAMS, Judge.
Exie B. Tyson, testator's wife, her nephew, Arbie E. Fields[1], and Irene Tyson Hutcherson, testator's sister and executrix of his will, filed a joint petition for declaratory judgment seeking a judicial interpretation of the meaning of the dispositive language of the testator's last will and testament and handwritten codicil. The trial court rendered a declaratory judgment interpreting the testator's intent with respect to the testator's Louisiana property. The trial court's judgment declared that Exie B. Tyson and Arbie E. Fields were entitled to inherit the testator's Louisiana property known as the Henderson estate and that the residuary legatees were entitled to inherit the testator's other immovable property in Louisiana, known as the Tyson estate. Exie Tyson and Arbie Fields appeal. For the following reasons, we affirm in part, reverse in part and render.

FACTS
The testator, Marshall Lee Tyson ("Tyson") died on November 1, 1991. Although Tyson was originally from Louisiana, he was domiciled in Los Angeles, California at the time of his death. He executed a valid typewritten will in California on February 22, 1984, and subsequently, a handwritten codicil dated November 12, 1986.
Tyson's will provided in pertinent part:
I declare that it is my intention to dispose of all my property, both real and personal, of whatever nature and wherever situated, which I am entitled to dispose of by will.
I declare that all property held and known by me, of whatever nature and wherever situated, regardless of how title is held is separate property.
I declare that the property to be dispose [sic] of by this will as follows:
Real property located in the City of Longwood, Caddo Parish, Louisiana, and described as:
16,467 Acres-Lot 7. Henderson Estate. 3.47 Acres-Lot 7A. Henderson Estate.
Other real property in Louisiana(location and description are unknown)
APPOINTMENTS
I appoint as Executrix of this will IRENE HUTCHISON [sic], to serve without Bond.
DISPOSITION OF ESTATE
I make the following specific bequests:
To EXIE B. TYSON, my spouse and ARBY E. FIELDS, my nephew of my wife, as joint tenants, the real property in Louisiana and interest in other real property and personal property wherever located to be divided according to the laws where such property is located.
To IRENE HUTCHINSON [sic], my sister I give 50% of the residue of my estate, of whatever nature and wherever situated, provided she survives me by at least 90 days.
To my nieces and nephews, MARSHALL GILLIAM, HALDENE GILLIAM, MILDRED WILLIAMS AND CHANCEY GILLIAM, I give 50% of the residue of my estate, of whatever nature and wherever situated, to share and share alike provided they survives [sic] me by at least 90 days.
If any beneficiary of mine predeceases me or fails to survive me by at least 90 days and leaves no issue, then any share of my estate that they may have taken shall augment proportionately to the shares of my surviving beneficiaries, unless a contrary intent is herein expressed.
The codicil, dated November 12, 1986, stated:
I am in sound mind. I am adding a little more to my will Give my sister Ira D. *150 Gilliam [sic] four children my part of the Shufer estate on which Shrulock Oil Co. have [sic] the lease on it [sic]. I hope you all understand this will the other will is still good only it pertain [sic] to the Henderson estate
 /s/
 Marshall L. Tyson
The residuary legatees, Irene Tyson Hutcherson, individually and as executrix of the estate, and the testator's nieces and nephews, Mildred Williams, Marshall Gilliam, Harold Dean Gilliam and Chauncey Gilliam, suggest that the will was not clear with respect to what constituted the "residue." They contend that the clear intent of the codicil, read in conjunction with the will, was for the "other real property in Louisiana," items 3 through 11 and item 13 of the sworn descriptive list, to be considered the residual portion of the estate and inherited 50% by Hutcherson and 50% by Tyson's nieces and nephews. [The Last Will and Testament, 1986 Codicil and Sworn Descriptive List of Assets and Liabilities have been reproduced and attached to this opinion as Appendix "A".] They also assert that the only property in Louisiana that Tyson intended to bequest to Exie Tyson and Arbie Fields was the Henderson estate.
Exie Tyson and Arbie Fields contend that the estate has no residue and the only effect of the codicil was to bequest the Schuford property to the testator's nieces and nephews. They argue that Tyson intended for them to inherit the Henderson estate as well as the "other real property in Louisiana."
Prior to trial, the parties stipulated that the Henderson estate should be inherited by Tyson's widow and her nephew. They also stipulated that the Schuford property should be inherited by Tyson's nieces and nephews. Thus, this litigation focused on items 3 through 11 and item 13 of the sworn descriptive list, which describes other Caddo Parish properties owned by the testator.
After trial, the court concluded that the bequest to Exie Tyson and Arbie Fields in the typewritten will was limited by the codicil to include only the Henderson estate. The trial court rendered judgment declaring that Exie Tyson and Arbie Fields are entitled to inherit the Henderson estate and the "other real property located in Louisiana" is considered the residue of the estate and is to be inherited by the residual legatees.
Exie Tyson and Arbie Fields appeal the trial court's judgment.

DISCUSSION
The sole issue presented on appeal is whether the trial court erred in its interpretation of the codicil. Appellants challenge the trial court's interpretation of the testator's statement "the other will is still good only it pertain [sic] to the Henderson estate."
When interpreting testaments, this Court must attempt to ascertain and carry out the intention of the testator. LSA-C.C. Art. 1712; Succession of Hagelberger, 96-2049 (La.App. 4th Cir. 8/27/97), 700 So.2d 226; Succession of Meeks, 609 So.2d 1035 (La.App. 2d Cir.1992). The intent of the testator is the paramount consideration in determining the provisions of a will, and when a will is free from ambiguity, the will must be carried out according to its written terms, without reference to information outside the will. Succession of Schiro, 96-1567 (La.App. 4th Cir. 4/9/97), 691 So.2d 1374. However, if a provision in a will is subject to more than one equally reasonable interpretation, the court may consider all circumstances existing at the time of the execution of the will which may aid in determining the intent of the testator, and not just the language of the will. Succession of Schiro, supra. Thus, where there is ambiguity in the description of the legatee, or the thing which the testator intended to bequeath, or the quantum or portion of the legacy, or where there is doubt as to the sense in which the words are used by the testator, the court may resort to extrinsic evidence. Succession of Hurst v. Gremillion, 552 So.2d 799 (La. App. 1st Cir.1989). The court uses extrinsic evidence to determine what the words of the testator, as written, actually mean. It is important to note that such evidence is used solely to resolve ambiguity, not to rewrite the will or do violence to its terms. Succession of Hurst v. Gremillion, supra.
*151 Courts must seek to give meaning to all testamentary language in a will and avoid any interpretation that would act to render the language meaningless or reduce it to surplusage. LSA-C.C. art. 1713; Succession of Meeks, supra. In the interpretation of wills, the first and natural impression conveyed to the mind on reading the clause involved is entitled to great weight. Adams v. Taylor, 552 So.2d 744 (La.App. 1st Cir. 1989).
According to appellees, if Exie Tyson and Arbie Fields inherit according to the terms of the will, the residuary clauses will have no effect. Appellees argue that LSA-C.C. art. 1713 requires that a disposition should be read in a manner so that it can have effect, rather than one where it has no effect. The appellees claim that the testator intended for them to inherit all of his real property in Louisiana, except the Henderson estate. They base their assertion on the wording of the codicil, in particular, the testator's use of the word "only" when referring to the Henderson estate. Appellees concluded that, the word "only" was used to specifically limit the bequest to Exie Tyson and Arbie Fields to the Henderson estate.
Appellants claim that the will is unambiguous in its declaration that the testator intended to dispose of all of his real and personal property in Louisiana as well as in any other state. According to appellants, to reach a conclusion that the term "real property in Louisiana" refers only to the Henderson estate would eliminate the disposition of most of the real property in the estate, and therefore, violate the provisions of LSA-C.C. art. 1713.
As previously stated, a court may resort to extrinsic evidence to resolve ambiguity in a will. In this instance, the trial court relied on the testimony of Irene Hutcherson to attempt to resolve the ambiguity. Hutcherson testified that she had discussions with the testator regarding his will. She stated that Tyson had informed her that he wanted Exie Tyson and Arbie Fields to have the Henderson estate. However, Hutcherson did not testify that the testator intended for Exie Tyson and Arbie Fields to inherit only the Henderson estate. During further questioning, Hutcherson was asked about "her interpretation of the will" and what "in her mind" was the testator's intention. She responded that the testator intended to give the residuary legatees the remaining property in Louisiana. We conclude that Hutcherson's testimony was not sufficient to determine what the words of the testator, as written, actually meant. Most of Hutcherson's testimony was based on her interpretation of the testator's will rather than concrete evidence. Thus, her testimony does not resolve the ambiguity in the will.
We agree with the trial court's conclusion that the codicil makes a specific bequest of the Schuford property, but we cannot agree with the trial court's conclusion that the codicil also limits the language of the will with respect to the bequest of the real property to include only the Henderson estate.
The record discloses that the testator's property in Louisiana consists of the Henderson estate, the Schuford property and other property in Louisiana referred to at the trial as the Tyson property. Despite the poor wording of the will and the ambiguities present[2], the provisions of the will clearly declare the testator's intent to leave Exie Tyson and Arbie Fields, as joint tenants, all of his real property in Louisiana. The provisions of the will were affected by the subsequent codicil which made a specific bequest of the Schuford property to the testator's nieces and nephews, thus leaving the remaining real property in Louisiana to Exie and Arbie.
In the codicil, the testator did not state that the will only pertained to the Henderson estate. Instead, he remarked that the will was "still good only it pertain [sic] to the Henderson estate." We conclude that the word "only" was intended to be descriptive (and) as opposed to restrictive, thereby limiting the bequest that the testator made to Exie and Arbie. In other words, the testator was not using the word "only" as an *152 adverb, but as a conjunction with essentially the same meaning as the word "except." As previously stated, the original will was clear in describing Tyson's intent regarding the disposition of his property in Louisiana. In the codicil, the testator stated that he wanted to "add a little more" to his will. This statement did not revoke any provisions of the original will other than with respect to the Schuford property. To read the codicil otherwise, not only would transpose the words "only" and "it" in the codicil, but would depart significantly from the original will that plainly described the real property to be disposed of as including both the Henderson estate and other real property in Louisiana and plainly made a bequest to the decedent's spouse and her nephew, as joint tenants, of the real property in Louisiana. Under the provisions of LSA-C.C. art. 1693, posterior testaments that do not expressly revoke prior ones, annul in the latter only such dispositions therein contained as are incompatible with the new ones, or contrary to them, or entirely different.

CONCLUSION
For the foregoing reasons, we affirm the trial court's judgment declaring that Exie B. Tyson and Arbie E. Fields are entitled to inherit items 1 and 2 of the sworn descriptive list, also known as the Henderson estate. We reverse the trial court's judgment finding that the residuary legatees, Irene Tyson Hutcherson, Mildred Williams, Marshall Gilliam, Harold Dean Gilliam and Chauncey Gilliam are entitled to inherit items 3 through 11 and item 13 of the sworn descriptive list, known as the Tyson property. We amend the judgment to interpret Marshall Lee Tyson's will as a bequest of items 3 through 11 and item 13 of the sworn descriptive list of assets and liabilities, known as the Tyson property, 50% to Exie B. Tyson and 50% to Arbie E. Fields. Costs of this appeal are assessed to appellees, Irene Tyson Hutcherson, Mildred Williams, Marshall Gilliam, Harold Dean Gilliam and Chauncey Gilliam.
AFFIRMED IN PART; REVERSED IN PART; AMENDED AND RENDERED.
*153
 APPENDIX "A"
 THE WILL OF
 MARSHAL TYSON
 I, MARSHAL TYSON, a resident of Los Angeles County,
California, declare that this is my Will, and I revoke all former
Wills and Codicils made by me.
 DECLARATIONS
 I am married to ETLE TYSON and all references in this Will to
my spouse are to her.
 I have no children living or deceased.
 I have no other children living or deceased.
 I have intentionally omitted all my heirs who are not
specifically mentioned herein, and specifically disinherit each and
all persons whomsoever claiming to be, or who may lawfully be determined
to be my heirs at law, except as otherwise mentioned in
this Will. If any such person or such heirs, or any devises and
legatees, who if I died intestate, would be entitiled to any part
of my estate, shall seek to assert any claims to my estate, except
as otherwise proveded under this Will, or attach, oppose or seek to
set aside any of its provisions, or to change any part of the
testamentary plan of this Will, either in or our of Court, then in
any and all of the above mentioned cases and events, I hereby
bequeath to such person or persons, the sum of ONE DOLLAR ($1.00)
and no more, in lieu of any other share or property to which he
would have otherwise be entitled, by devise or inheritance, or
which they may be entitled to take under provision of law, shall
go in fee to my next heirs at law, excluding such defisees and
legatees, their sucessors in interest, and such contestants,
 Initial
*154
according to the laws of succession, then in force in the State
of California, anything in this Will to be contrary notwithstanding.
 I declare that it is my intention to dispose of all my
property, both real and personal, of whatever nature and wherever
situated, which I am entitled to dispose of by will.
 I declare that all property held and known by me, of whatever
nature and wherever situated, regardless of how title is held is
separate property.
 I declare that the property to be dispose of by this Will
as follows:
 Real property located in the City of Longwood, Caddo Parish,
Louisiana, and described as:
 16,467 Acres-Lot 7. Henderson Estate. 3.47 Acres-Lot 7A.
Henderson Estate.
 Other real property in Louisiana- (location and description
are unknown)
 APPOINTMENTS
 I appoint as Executrix of this Will IRENE HUTCHISON, to serve
without Bond.
 DISPOSITION OF ESTATE
 I make the following specific bequests:
 To EXIE B. TYSON, my spouse and ARBY E. FIELDS, my nephew of
my wife, as joint tenants, the real property in Louisiana and
interest in other real property and personal property wherever
located to be divided according to the laws where such property is
located.
 Initial
*155
 To IRENE HUTCHISON, my sister I give 50% of the residue of
my estate, of whatever nature and wherever situated, provided she
survives me by at least 90 days.
 To my nieces and nephews, MARSHALLGILLIAM, HALDENE GILLIAM,
MILDRED WILLIAMS AND CHANCEY GILLIAM, I give 50% of the residue
of my estate, of whatever nature and wherever situated, to share
and share alike provided they survives me by at least 90 days.
 If any beneficiary of mine predeceases me or fails to
survive me by at least 90 days and leaves no issue, then any share
of my estate that they may have taken shall augment proportionatel
to the shares of my surviving beneficiaries, unless a contrary
intent is herein expressed.
 Initial
*156
 POWERS OF EXECUTOR
 A. I authorize my Executor to sell, with or without
notice, at either public or private sale, and to lease, any
property of my estate, subject to only such confirmation as
required by law.
 B. I further authorize my Executor either to continue
the operation of any business belonging to my estate for such
time and in such manner as my Executor may deem advisable and
for the best interests of my estate, or to sell or liquidate the
business at such time and on such terms as my Executor may deem
advisable and for the best interests of my estate. Any such
operation, sale or liquidation by my Executor, in good faith,
shall be at the risk of my estate and without liability on the
part of my Executor for any resulting losses.
 C. My Executor shall determine, in a manner which
would minimize taxes, whether any or all expenses of an administration
of my estate shall be used as Federal Estate Tax
Deductions or as Federal Income Tax Deductions, and whether date
of death or alternate valuation values should be used for estate
tax purposes. No beneficiary under this Will, whether an income
beneficiary or a remainderman of any trust, or other beneficiary,
shall have any right to recoupment or restoration of any losses
the beneficiary suffers as the result of the use of any such
deductions for one or the other of such purposes.
 Initial
*157
 A. The masculine, feminine or neuter gender, and the
singular or plural shall be deemed to include the others where
appropriate.
 B. The first named Appointee shall serve in the designated
capacity uniess or until he becomes unable or unwilling to
act, in which event the Alternate Appointees shall serve in the
order named. In the event Co-Appointees have been nominated to
serve jointly, and one is or becomes unable or unwilling to act,
the other shall serve alone.
 C. No successor Appointee shall be liable or responsible
for any losses and expenses resulting from or occasioned by anything
done or neglected to be done in the administration of this
Will prior to the date of acceptance of appointment by such
Appointee, unless otherwise indicated in my Will.
 D. If any provision of this Will is unenforceable,
the remaining provisions shall nevertheless be effective.
 E. Except as otherwise provided herein, I have intentionally
omitted to provide for any of my heirs, living at the
time of my death.
 F. If any beneficiary under this Will shall in any
manner contest or attack this Will or any of its provisions, then
in such event, any share or interest in my estate given to such
contesting beneficiary under this Will is hereby revoked and
shall be disposed of in the same manner provided here as though
such contesting beneficiary had predeceased me without issue.
 Initial
*158
 No interest shall be paid on any legacy under
this Will unless a contrary intent is herein expressed.
 I subscribe my name to this Will this 22 day of
 Feb 1984, at Inglewood, CA
 
 MARSHAL TYSON
 The within instrument, consisting of 6 pages, including
this page, was subscribed on the date it bears by Testator, who,
at the time of subscribing, declared it to be Testator's Will.
The subscription and declaration were made in our presence, we
being present at the same time; and we, at Testator's request and
in Testator's presence, and in the presence of each other, have
signed the instrument as witnesses on the date indicated above.
We are acquainted with Testator who is over the age of 18, and to
the best of our knowledge is of sound mind and is not acting under
duress, menace, fraud, misrepresentation or undue influence.
We declare under penalty of perjury that the foregoing
is true and correct and that this declaration is being executed
on February 22, 1984 at Inglewood, CA 90301
 Address 238 S. La Brea Ave. 
 Inglewood, CA 90301 
 Address 238 S. La Brea Ave. 
 Inglewood, CA 90301 
 Address 238 S. La Brea Ave. 
 Inglewood, CA 90301 
*159 
*160
SUCCESSION : NUMBER 396611 
OF : FIRST JUDICIAL DISTRICT COURT
MARSHALL LEE TYSON : CADDO PARISH, LOUISIANA
 SHORN DESCRIPTIVE LIST OF ASSETS AND LIABILITIES
STATE OF LOUISIANA:
PARISH OF CADDO :
 BEFORE ME, a Notary Public In and for the above State and Parish,
came and appeared IRENE TYSON HUTCHERSON, who, after first being duly sworn,
did depose and say:
 That she is one of the heirs in the above cause, and that the
following is a true and correct list of all assets owned by decedent located
in the State of Louisiana, valued as of the date of his death, November 1,
1991.
 Appearer further declares that to the best of her knowledge and
belief decedent disposed of none of his assets prior to his death for the
sole purpose of avoiding Louisiana inheritance taxes.
 
IRENE TYSON HUTCHERSON
SWORN TO AND SUBSCRIBED before me, this 9th day of July, 1992.
 
 NOTARY PUBLIC

*161
IMMOVABLE - SEPARATE:
REAL ESTATE:
1. Lot 7, Henderson Estate Partition,
 a partition of lands located in
 Sections 14 and 23, Township 18
 North, Range 16 West, Caddo Parish,
 Louisiana, as per plat recorded
 in Conveyance Book 800, page 85
 of the records of Caddo Parish,
 Louisiana, being 16.467 acres,
 a/k/a Assessor's Tract
 XXXXXX-XXX-XXXX $ 2,400.00
2. Lot 7-A, Henderson Estate
 Partition, a partition of lands
 located in Sections 14 and 23,
 Township 18 North, Range 16 West,
 Caddo Parish, Louisiana, as per
 plat recorded in Conveyance Book
 800, page 85 of the records of
 Caddo Parish, Louisiana, being
 3.47 acres, a/k/a Assessor's Tract
 XXXXXX-XXX-XXXX 500.00
3. An undivided 9/44ths Interest
 in the West Half of Northwest
 Quarter (W½ of NW¼); Northeast
 quarter of Northwest Quarter (NE¼
 of NW¼); Northwest Quarter of
 Northeast Quarter (NW¼ of NE¼)
 Section 5, Township 22 North,
 Range 15 West, Caddo Parish,
 Louisiana, a/k/a Assessor's Tract
 XXXXXX-XXX-XXXX & 3 (Assessed
 as the John L. Stewart Estate) 2,000.00
4. 36.57 acres, more or less, being
 the Southeast Quarter of Southwest
 Quarter (SE¼ of SW¼) Section 19,
 Township 23 North, Range 15 West,
 Caddo Parish, Louisiana (LESS
 North 210 ft. of East 425 ft.
 and LESS ROAD), a/k/a Assessor's
 Tract XXXXXX-XXX-XXXX 4,400.00
5. An undivided one-fourth (¼)
 interest in 85 acres, being the
 South Half of Northeast Quarter
 (S½ of NE¼) Section 6, Township
 22 North, Range 15 West, Caddo
 Parish, Louisiana, a/k/a Assessor's
 Tract XXXXXX-XXX-XXXX 3,075.00
6. An undivided one-fourth (¼)
 interest in 107.50 acres, being
 the North Half of Southwest Quarter
 (N½ of SW¼), and West Half of
 Northwest Quarter of Southeast
 Quarter (W½ of NW¼ of SE¼) Section
 6, Township 22 North, Range 15
 West, Caddo Parish, Louisiana,
 a/k/a Assessor's Tract
 XXXXXX-XXX-XXXX

*162
7. An undivided one-fourth (¼)
 interest In 10 acres, being the
 East 10 acres of Northeast Quarter
 of Southeast Quarter (NE¼ of SE¼)
 Section 1, Township 22 North,
 Range 16 West, Caddo Parish,
 Louisiana, a/k/a Assessor's Tract
 XXXXXX-XXX-XXXX 275.00
8. An undivided one-fourth (¼)
 Interest in 10 acres, being
 described as the Northwest Quarter
 of Northwest Quarter (NW¼ of NW¼)
 Section 30, Township 23 North,
 Range 15 West, Caddo Parish,
 Louisiana, a/k/a Assessor's Tract
 XXXXXX-XXX-XXXX 1,500.00
9. An undivided one-fourth (¼)
 interest in 25 acres, more
 particularly described as South
 Half of Southeast Quarter of
 Northeast Quarter (S½ of SE¼ of
 NE¼) and Northeast Quarter of
 Southeast Quarter of Northeast
 Quarter (NE¼ of SE¼ of NE¼) (LESS
 5 acres in a square in the
 Northeast corner) Section 21,
 Township 23 North, Range 16 West,
 Caddo Parish, Louisiana, a/k/a
 Assessor's Tract XXXXXX-XXX-XXXX 725.00
10. An undivided 1/24ths interest
 in 29 acres, more or less, being
 Southeast Quarter of Northwest
 Quarter (SE¼ of NW¼) Section 21,
 Township 23 North, Range 16 West,
 LESS North 166 ft. of East 166
 ft 4 LESS East 255 ft. of South
 851 ft. & LESS West 220 ft. of
 East 686 ft. of North 198 ft.
 thereof, Caddo Parish, Louisiana,
 a/k/a Assessor's Tract
 XXXXXX-XXX-XXXX 950.00
11. An undivided 1/24ths interest
 in 64.36 acres, more or less,
 being North 30 acres of South
 Half of Southeast Quarter,
 Northwest Quarter of Southeast
 Quarter (S½ of NW¼ of SE¼),
 Section 24, Township 23 North,
 Range 16 West, LESS South 295.16
 ft. of North 712.58 ft. of West
 295.16 ft. thereof, Caddo Parish,
 Louisiana, a/k/a Assessor's Tract
 XXXXXX-XXX-XXX 2,125.00
12. An undivided .08125 interest in
 South Half of Northeast Quarter
 (S½ of NE¼) Section 29, Township
 18 North, Range 16 West, Caddo
 Parish, Louisiana, which interest
 was acquired by David D. Tyson
 from James Schuford July 2, 1927

*163
 (Assessed as the Lewis Schuford
 Estate), a/k/a Assessor's Tract
 XXXXXX-XXX-XXXX 860.00
13. An undivided one-fourth (¼)
 interest in South 10 feet of North
 85 feet of Lots 14 and 15, Foster
 & Long's Subdivision, a subdivision
 In the City of Shreveport, as
 per plat recorded in Plat Book
 9, page 238 of the Records of
 Caddo Parish, Louisiana, together
 with all buildings and Improvements
 thereon, a/k/a Assessor's Tract
 XXXXXX-XXX-XXXX & 11 (interest
 acquired by Fred L. Harris in
 1976. Deed lost, interest to
 be quitclaimed to proper owner) 0.00
 ________
TOTAL IMMOVABLE - REAL ESTATE: $ 22,885-00
 ___________
GROSS ESTATE: $ 22,885.00

NOTES
[1] Testimony in the record reveals that Arbie E. Fields had resided with Marshall and Exie Tyson since he was approximately six weeks old.
[2] The will included, among other errors, a misspelling of the names of family members and a mistake in the amount of acreage in the description of the Henderson estate.